# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re                                                              Case No. 05-32786
                                                                   Chapter 13

KENNETH F. GILBERT,

    Debtor.

## MEMORANDUM OPINION

Montgomery Wholesale Lumber, Inc. ("Wholesale Lumber") filed an objection to confirmation of the chapter 13 plan of Kenneth F. Gilbert ("debtor"). An evidentiary hearing was held on August 28, 2006. At the hearing, Richard C. Dean, Jr. represented Wholesale Lumber, and Lewis B. Hickman, Jr. represented the debtor.

## Jurisdiction

The court derives its jurisdiction in this proceeding from 28 U.S.C. § 1334 and from the United States District Court for this district's order referring title 11 matters to the bankruptcy court. Further, because an objection to confirmation of a plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L), this court's jurisdiction is extended to the entry of a final order or judgment.

## Law

Wholesale Lumber objects to confirmation contending that the debtor's plan, which pays nothing to unsecured creditors, fails to satisfy the so-called "best interest of creditors" test of § 1325(a)(4).[1]

---

[1] In addition, Wholesale Lumber objects on grounds that the plan does not devote all of the debtor's disposable income for the applicable commitment period (11 U.S.C. § 1325(b)) and that the plan has not been proposed in good faith (11 U.S.C. § 1325(a)(3)). At the hearing, Wholesale Lumber did not present any evidence concerning nor further pursue these two grounds. The court, therefore, concludes that Wholesale Lumber's objection on disposable

That section of the Code provides:

> (a) Except as provided in subsection (b), the court shall confirm a plan if — . . .
>> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

11 U.S.C. § 1325(a)(4).

The debtor's plan provides for the sale of a mobile home and land and for the net equity from that sale, if any, to be paid to unsecured creditors. The plan, however, contains no provision limiting the time in which the property must be sold or providing an alternative in the event the property does not sell.

The application of the law is not in dispute by either party. The debtor has valued the mobile home and land at $117,400. Allowing for the $103,535 mortgage balance, the debtor's $5,000 homestead exemption, the undivided ½ interest of the co-owner, and costs of sale, the debtor maintains that nothing would be paid to unsecured creditors in a hypothetical chapter 7 case. Hence, according to the debtor, the plan satisfies the best interest of creditors test.

Conversely, Wholesale Lumber contends that unsecured creditors would be paid a dividend in a hypothetical chapter 7 case because the debtor's mobile home and land are worth $195,000. Hence, the dispute here is purely a factual one. The court's task is to determine the value of the debtor's mobile home and land and, from that determination, decide whether the best interest of creditors

---

income and good faith grounds has been abandoned.

test is met.

For best interest purposes, the debtor's property must be valued as of the effective date of the plan. 11 U.S.C. § 1325(a)(4).

In a chapter 13 plan confirmation dispute, the debtor bears the burden of proving that the plan satisfies each of the confirmation requisites enumerated in § 1325. *Internal Revenue Service v. Stewart (In re Stewart)*, 172 B.R. 14, 15-16 (W.D. Va. 1994).

## Findings of Fact

The debtor purchased the mobile home and land at issue in 2000. The price of the mobile home was $40,000 to $45,000. The price of the land (51 acres in rural Tallapoosa County) was $90,000 or about $1,765 per acre.[2]

In 2002, the debtor refinanced the mobile home and land through Regions Bank. At that time, the mobile home and land were appraised for $140,000 to $145,000.

In 2004, the debtor owed money to Bass Lumber Company ("Bass") for materials purchased on open account.[3] In the winter of 2004, Bass notified the debtor that his open account would be terminated unless payment was made. In order to preserve his account, in the spring of 2005 the debtor gave Bass authority to cut the timber from his 51-acre tract and to apply the timber proceeds to his outstanding balance. There is nothing in the record to show

---

[2] The land may not have been purchased all at the same time. Exhibit D-3 is the HUD-1 settlement statement on the debtor's purchase of 25 acres of this property in September 2000. It is unclear from the evidence if the remainder was bought before or after September 2000.

[3] The debtor was in the construction business. The Bass account was for materials used in that business.

how much Bass received from the timber cut from the debtor's property.

The debtor filed this chapter 13 bankruptcy petition in September 2005. In the schedules filed with the petition, the debtor valued the mobile home and land at $117,400. He based that valuation on the tax assessor's valuation for 2004. *See* Ex. D-2, 2004 Tax Assessment.

Later, in April 2006, the debtor listed the property for sale for $155,000. Exhibit D-4 is the exclusive listing agreement between the debtor and Saunders Realty. During the 90 days that the property was listed for sale through Saunders Realty, the debtor did not receive any offers to purchase, full price or otherwise.

In July 2006, Marion F. Kelly and Gerald A. Knight of Knight Appraisal Company appraised the mobile home and land.[4] *See* Ex. C-1. They appraised the mobile home and 11 acres at $75,000. The remaining 40 acres were appraised at $3,000 per acre. Therefore, the Knight Appraisal Company's total appraised value was $195,000.

There are, however, a number of concerns with this appraisal. In making the appraisal, Knight separately appraised the mobile home and 11 acres from the remaining 40 acres. Using the comparable sales approach, Knight compared the debtor's mobile home and 11 acres to sales of three other properties. Two of the comparables are located in the vicinity of Lake Martin. The third comparable is located in Elmore County, a site much closer to the City of Montgomery. According to the uncontroverted testimony of the debtor, the desirable location of the properties used by the appraiser as comparables makes them uncomparable to his

---

[4] Wholesale Lumber offered Knight Appraisal Company's appraisal of the debtor's property into evidence. The debtor had previously stipulated to the admission of the appraisal.

4

property.

Another concern with the appraisal is the $3,000 per acre value placed upon the remaining 40 acres. The appraisal makes no explanation of how this price was derived. The court notes that this land was purchased approximately five years prior to the debtor's bankruptcy. The purchase price per acre was $1,765, which is about 60% of the appraised value. Since the purchase, however, the timber has been removed from the property. No evidence was offered to explain why, in the appraiser's view, the property appreciated by almost 70% over a five-year period ignoring the fact that timber was removed.[5]

Considering all of these facts, the court concludes that the best evidence of the value of the property starts with the amount that the debtor himself listed the property for sale. Although the Knight appraisal was conducted nearest in time to the "effective date of the plan," the accuracy of the Knight appraisal has been called into question in a number of respects, and the conclusions drawn in the appraisal have not been satisfactorily explained.

The April 2006 listing price was $155,000. Recognizing that no purchase offers were received at that price, the listing price was obviously higher than the market value, and thus, an adjustment is accordingly due. The court concludes that the value of the mobile home and land as of the petition date was $139,500 (a 10% reduction of the listing price).

---

[5] One other indicia of value was part of the evidence. The debtor testified that he listed the value of his mobile home and land on his 2004 tax return at $168,000. The debtor, however, further testified that this amount represents his basis in the property for depreciation purposes and was not intended to be the market value.

5

## Conclusion

Having found that the debtor's mobile home and land are worth $139,500, the court concludes that the best interest of creditors test is not satisfied. Although the plan provides for the sale of this property and for the payment of the net proceeds, less the homestead exemption, to unsecured creditors, there is no plan alternative providing for payment of this equity to unsecured creditors in the event that no sale is made.

Accordingly, an order will enter denying plan confirmation. Further, the debtor's case will be ordered dismissed if he fails to file an amended plan, consonant with this memorandum, within the prescribed time.

Done this the 6th day of October, 2006.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Debtor
   Lewis B. Hickman, Jr., Attorney for Debtor
   Richard C. Dean, Jr., Attorney for Creditor
   Curtis C. Reding, Chapter 13 Trustee

6